UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, et al., <br> Plaintiffs, <br> v. <br> JAMES ISLAND PLASTERING, INC., <br> Defendant. | Case No. 19-cv-02921-EMC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Docket No. 20 |

Plaintiff is the Board of Trustees for the following four trust funds: (1) Laborers Health and Welfare Trust Fund for Northern California ("Health and Welfare Trust Fund"); (2) Laborers Vacation-Holiday Trust Fund for Northern California ("Vacation-Holiday Trust Fund"); (3) Laborers Pension Trust Fund for Northern California ("Pension Trust Fund"); and (4) Laborers Training-Retraining/Apprenticeship Trust Fund for Northern California ("Training Trust Fund"). Collectively, the trust funds shall hereinafter be referred to as the "Trust Funds." The Board filed the instant action in its capacity as trustee for the Trust Funds, asserting claims pursuant to the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA").

After Defendant James Island Plastering, Inc. ("JPI") failed to respond to the Board's complaint, the Clerk of the Court entered its default on July 16, 2019. *See* Docket No. 14 (notice). The Board thereafter moved for entry of a default judgment. A hearing was held on the Board's motion on March 5, 2020. Having considered the Board's motion and accompanying submissions, the Court hereby **GRANTS** the motion for default judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

The evidence submitted by the Board in conjunction with their motion for default judgment reflects as follows. *See generally* Docket Nos. 26, 29 (supplemental briefing and evidence). In March 2003, JIP entered into a Memorandum Agreement with a local union affiliated the Northern California District Council of Laborers. By signing the Memorandum Agreement, JIP also agreed to be bound by a certain Master Agreement entered into by the local union and an employer's association – as well as all successor Master Agreements. The relevant successor Master Agreements are the 2012-2016 Master Agreement and the 2016-2019 Master Agreement. Those Master Agreements contain provisions stating that the employer will make contributions to certain trust funds established for the benefit of employees. The Master Agreements also contain provisions incorporating by reference the Trust Agreements for the relevant trust funds. The relevant trust funds include the Trust Funds at issue in the instant case. The Trust Agreements for the Trust Funds at issue contain provisions allowing the Board to audit the employer to ensure that contributions are being properly made. JIP has recognized its obligation to make contributions and to submit to an audit by providing the Board with some documents requested by the Board for audit purposes.

In the pending motion for default judgment, the Board asks the Court to, *inter alia*, order JIP to comply with a full audit (for the period starting January 1, 2014) so that the Board may ensure that contributions are being properly made.

## II. DISCUSSION

A. <u>Adequacy of Service of Process</u>

"As a preliminary matter, the Court must first 'assess the adequacy of the service of process on the party against whom default is requested.'" *Bd. of Trs. v. Charles B. Harding Constr., Inc.*, No. C-14-1140 EMC, 2014 U.S. Dist. LEXIS 175680, at *5-6 (N.D. Cal. Dec. 18, 2014). Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) allows for service "following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

Fed. R. Civ. P. 4(e)(1). Under California law, substituted service on a corporation is permitted. *See* Cal. Code Civ. Proc. § 415.20(a). In the instant case, the Board has provided evidence to support its claim that substituted service was effected on JIP. *See* Docket No. 6 (proofs of service). Accordingly, the Court concludes that service of process on JIP was properly effectuated.

B. <u>Merits of Motion for Default Judgment</u>

As noted above, the Clerk of the Court entered JIP's default on July 16, 2019. *See* Docket No. 14 (notice). The Board thereafter moved for entry of a default judgment. After entry of default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). A court may consider the following factors in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the Court must construe as true all of "the factual allegations of the complaint, except those relating to the amount of damages." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The Court may also consider evidence submitted by the Board in support of its motion for default judgment. *Cf.* Fed. R. Civ. P. 55 (noting that a "court may conduct hearings . . . when, to enter or effectuate judgment, it needs to [*e.g.*] establish the truth of any allegation by evidence" or "investigate any other matter").

The Court finds that the *Eitel* factors weigh in favor of granting default judgment. For example, as to the first factor, if the motion for default judgment were to be denied, then the Trust Funds at issue (on whose behalf the Board has sued) would likely be prejudiced as they would be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. 03-cv-04058, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D.Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default

1    judgment] would leave them without a remedy.  Prejudice is also likely in light of the merits of

2    their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If

3    Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other

4    recourse for recovery.").

As for the fourth *Eitel* factor, at this point, the Board is not asking for money damages – only an audit; furthermore, although the Board has not waived its right to seek damages after conducting an audit, it has indicated that it will only seek damages tailored to JIP's specific misconduct. *See Pepsico*, 238 F.Supp.2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct").

As to the fifth, sixth, and seventh *Eitel* factors, because JIP has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts.  Nor is there any indication that JIP's default was due to excusable neglect.  And while public policy favors decisions on the merits, *see Eitel*, 782 F.2d at 1472, JIP's choice not to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

The only remaining factors that warrant additional analysis are the second and third *Eitel* factors – *i.e.*, the merits of the Board's substantive claims and the sufficiency of those claims.  As noted above, the Board has provided evidence to support its claim that JIP agreed to make contributions to the Trust Funds at issue and to submit to an audit to ensure compliance – in particular (1) its Memorandum Agreement, which incorporated (2) a Master Agreement and all successor Master Agreements, which in turn incorporated (3) the Trust Agreements for the Trust Funds at issue.  ERISA authorizes a fiduciary to bring a civil action to enforce an employer's obligation under 29 U.S.C. § 1145 "to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.  Furthermore, "[w]here a Fund's trust documents, to which an employer has bound itself, specifically provide that Fund trustees can examine any of the employer's records, an employer must comply with such agreed upon

obligations." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Ben. & Training Funds v. BDR Inc.*, No. 05-cv-1385, 2006 U.S. Dist. LEXIS 70967, at *9 (N.D.N.Y Sept. 29, 2006) (citing *Central States, Southeast & Southwest Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985)). Thus, the Board has successfully stated a claim for relief, including but not limited to a right to an audit.[1]

C. Relief

"Because the Court concludes that default judgment is warranted, it must determine what damages or other relief is appropriate. [The Board has] the burden of 'proving up' . . . damages or the need for other requested relief." *Harding*, 2014 U.S. Dist. LEXIS 175680, at *11-12.

The immediate relief requested by the Board is an injunction directing JIP to submit to an audit of its financial records for the period starting January 1, 2014. *See* Mot. at 1. The Board's requested injunctive relief is appropriate under ERISA to the extent the audit is tailored to the purpose of verifying that required contributions have been paid. *See International Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 31 (D.D.C. 2002) ("ERISA authorizes the court to provide for other legal or equitable relief as the court deems appropriate [under 29 U.S.C. § 1132(g)(2)(E)]. This relief can include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records."). Accordingly, the Court grants the Board's claim for injunctive relief. JIP is ordered to: permit an auditor designated by the Board to enter upon its premises or other location where records are kept, during business hours, and at a reasonable time or times, to examine and copy books,

---

[1] The Board has also noted that, even if the relevant Master Agreements did not incorporate the Trust Agreements for the Trust Funds at issue – which contain the audit provisions – that would not prevent them from getting an audit. *See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990) (concluding that audit could be conducted because an audit provision was in the trust agreement, even if the collective bargaining agreement was silent on the matter; noting that, even though the employer "is not a signatory to the Trust Agreement, it is undisputed that it contributed to the Fund and intended its employees to receive the benefits from the Fund" – the employer "would not make the contributions if it did not intend its employees to receive benefits from the Fund"); *see also N.Y. State Teamsters Conference Pension & Ret. Fund v. Boening Bros.*, 92 F.3d 127, 130 (2d Cir. 1996) (stating that, even though employer "has not entered into any explicit contractual undertaking to submit to an audit by the Fund[,] [w]e nonetheless conclude that such an audit may be conducted by the trustees of the Fund pursuant to their fiduciary duties under the Trust Agreement and the common law of trusts as incorporated in ERISA"; citing in support, *inter alia*, *Miramar*).

5

records, papers, or reports of JIP to determine whether it is making full and prompt payment of all sums required to be paid to the Trust Funds at issue.

As for the remaining relief requested by the Board, the Court rules as follows:

- To the extent the Board asks for the Court to retain jurisdiction and to amend judgment if the Board discovers, after the audit, that contributions are owing, the Court retains what jurisdiction it has if the Board moves to alter or amend judgment pursuant to Federal Rules of Civil Procedure 59 and/or 60.[2]
- To the extent the Board seeks an order "*permanently* . . . requir[ing] [JIP] to timely submit all required monthly contribution reports," Mot. at 2 (emphasis added), that request for relief is denied. Based on the papers submitted, the Board does not clearly establish JIP has failed to submit required monthly contribution reports; rather, its failure is to submit to an audit. This ruling, of course, does not preclude the Board from seeking relief in the future should JIP not provide required monthly contribution reports.
- To the extent the Board asks for attorney's fees in the amount of $9,673.25 and costs in the amount of $779.92, the request is granted. Fees and costs are provided for in the relevant agreements and also by statute. *See* 32 U.S.C. § 1132(g). Having reviewed the supporting declaration, the Court finds the requested fees and costs reasonable, and JIP has not appeared in this case to contest the amounts.

///
///
///
///
///
///

---

[2] At the hearing, the Court asked the Board if it wanted a delay in the entry of final judgment so that it could conduct the audit and then, if necessary, ask the Court to award contributions owed based on the findings from the audit. The Board, however, stated that it wanted an entry of final judgment.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Board's motion for default judgment. The Court also grants the Board's request for an audit and attorney's fees and costs.

The Clerk of the Court is instructed to enter a final judgment in accordance with the above. If the Board desires to amend the final judgment (*e.g.*, after conducting the audit), it will need to file a post-judgment motion to alter or amend the judgment.

This order disposes of Docket No. 20.

**IT IS SO ORDERED**.

Dated: March 10, 2020

_____
EDWARD M. CHEN
United States District Judge